ED. A. McCARTHY & SONS, INC., Plaintiff-Appellee, v. FLEMING et, Defendants-Appellees, FLEMING, Defendant-Appellant.

Ohio Appeals, First District, Hamilton County.

No. 8576.   Decided October 13, 1959.

*Messrs. Cors, Hair, Hartsock & Schneider,* for defendant-appellee Fast & Company.

*Messrs. Graydon, Head & Ritchey, Mr. William A. Mc-Kenzie,* and *Mr. William H. Anderson,* for defendant-appellant Dr. John G. Fleming.

For further history see *Omnibus Index* in bound volume.

MATTHEWS, P. J.   The plaintiff was engaged in the business of constructing and remodeling buildings.   The defendant, John G. Fleming, was the owner of a residence fronting on Auburn Avenue, Cincinnati, Ohio.   On or about October 26th, 1956, the plaintiff agreed to transform this residence into an office building, and the defendant agreed to pay therefor the sum of $26,478.00, to which should be added the cost of certain work not included in the original agreement.   The record does not show when the contract price was to be paid.

In January, 1957, the defendant Fleming paid $10,000.00 to the plaintiff on account of his obligation under said contract, and in February, 1957, made another payment of $10,000.00, without in any way complying with the mechanic's lien law in either instance.

Shortly thereafter, a dispute arose between the plaintiff and the defendant Fleming as to whether the plaintiff had substantially performed its contract, and this dispute finally resulted in the plaintiff filing this action, wherein the plaintiff prayed for judgment for $10,068.22, the balance alleged to be due on this contract, and for foreclosure of a mechanic's lien upon the property.   Various sub-contractors and material men were made parties defendants.   Fast & Company was one of these parties.   Fast & Co. filed an answer and cross-petition in which it alleged that it had done the painting required in the contract between the plaintiff and the defendant Fleming, and

that there was due it therefor the sum of $1,939.20, that it had perfected a mechanic's lien on the premises, and it prayed for judgment against plaintiff and for foreclosure of the mechanic's lien.

The trial court found in favor of Fast & Co. in the sum of $1,939.20, with interest as prayed for, entered judgment for that amount against the defendant Fleming in favor of Fast & Co., and also found that its lien was valid and granted foreclosure thereof.

This appeal is by the defendant Fleming from that judgment.

It does not appear why a personal judgment was rendered against defendant Fleming. However, the only part of the judgment that is questioned either in brief or oral argument is that which finds that Fast & Co. has a mechanic's lien and orders it foreclosed. The bill of exceptions contains only excerpts from the testimony of two witnesses. The trial judge specifically certifies that the bill of exceptions contains only "a portion of the evidence." As error is never presumed, and as the defendant Fleming has not questioned the personal judgment, we must assume that the defendant Fleming in some way made himself personally liable to Fast & Co.

Now upon. the subject of the lien of Fast & Co. We find that there is some evidence that at the time the defendant Fleming made the two payments of $10,000.00 each to the plaintiff as principal contractor, Fast & Co. had not commenced to perform—had done no painting, and it is argued that therefore it had not been damaged by the part payments. But that contention overlooks the provision of Section 1311.04, Revised Code, which provides that: "Whenever any payment of money becomes due from the owner, part owner, or lessee, or whenever the original contractor desires to draw any money from the owner, part owner, or lessee, under their contract, or whenever any mortgagee makes a written demand, such contractor shall make out and give to the owner, part owner, lessee, or mortgagee, or his agent, a statement under oath, showing the name of every laborer in his employ who has not been paid in full and also showing the name of every subcontractor in his employ, and of every person furnishing machinery, material, or fuel, and giving the amount which is due *or to become due to*

*them,* or any of them, for work done, or machinery, material, or fuel furnished to him, which statement shall be accompanied by a certificate signed by every person furnishing machinery, material, or fuel to him.''

A reading of this section is sufficient to disclose that when a principal contractor desires to draw money from the owner, he must, in order to comply with this section, certify not only the names of those who have actually performed work and to whom money was due at the time, but also the names of all persons with whom he has contracts to perform work in the future and to whom money would become due.

There is evidence in the bill of exceptions from which we infer that Fast & Co. had contracted to perform this painting before these payments were made, and furthermore, in view of the state of the record, we would be required to assume that fact in favor of the validity and regularity of the judgment under review.

Section 1311.04, Revised Code, further provides that:

''Until the statements are made and furnished in the manner and form provided for in this section, the contractor has no right of action or lien against the owner, part owner, or lessee, on account of such contract, and the subcontractor has no right of action or lien against the owner, part owner, lessee, or contractor, until he has furnished such statements, and any payments made by the owner, part owner, or lessee, before such statements are made or without retaining sufficient money, if that amount is due or it is to become due, to pay the subcontractor, laborers, or materialmen, as shown by the said statements and certificates, are illegal and made in violation of the rights of the persons intended to be benefited by Sections 1311.01 to 1311.24, inclusive, Revised Code, and the rights of such subcontractors, laborers, and materialmen to a lien, are not affected thereby.''

This provision prevents any dealing between the principal contractor and the owner from prejudicing in any way the rights of the subcontractors, laborers, and materialmen. The principal contractor is entitled to nothing until they are paid or otherwise satisfied.

But it is said that the principal contractor defaulted and

that instead of the owner owing the principal contractor the reverse is the fact.

We think it is true as stated in 36 O. Jur. (2), 508, that: "A mechanic's lien claim as to amount cannot be in excess of the claim of the contractor as measured by his performance of his contract * * * If a contractor fails to perform his contract, or if he abandons it, or commits a material breach thereof it is manifest that this may seriously affect the rights of sub-contractors, materialmen and laborers."

In *Quality Heating & Supply Co.* v. *Buckeye Loan & Building Co.*, 105 Ohio App., 369, this Court held, as stated in the syllabus, that:

"Where a contract for the air conditioning of a building provides that payments are to be made to the contractor by the owner 'as deliveries are made and work progresses as approved by architect,' payments made by the owner, without either a contractor's affidavit or an architect's certificate, are illegal, violative of the rights of subcontractors, laborers and materialmen under Section 1311.01 et seq., Revised Code, and, although such payments may have exhausted the balance due the contractor under the contract, may not be charged against the contract to the detriment of a materialman."

So a failure by a principal contractor to perform his contract is always a defense in an action by a subcontractor, laborer, or materialman against the owner. Failure to comply with the mechanic's lien law in making payments by the owner to the principal contractor can always be pleaded in avoidance. In other words, in determining the amount due the principal contractor, payments made without complying with the mechanic's lien law must be disregarded when considering the rights of a subcontractor, laborer, or materialman to a lien.

It, therefore, becomes necessary to examine this record to determine whether it shows that there was insufficient money due the principal contractor to satisfy the lien of Fast & Co. after disregarding the two payments of $10,000.00 each, which were made without complying with the law.

The judgment entry shows that Fleming was given a judgmet against plaintiff for $4,670.64 upon his cross-petition, based on the failure to perform his contract, and judgment against Fleming in favor of four subcontractors including Fast & Co.

for $3704.84 was rendered. It is therefore apparent that no matter how this judgment is construed, it is clear that disregarding the two payments of $10,000.00 each, as we must, there remained subject to the lien of Fast & Co. more than enough to satisfy it in full.

We find no error in the record, prejudicial to the defendant-appellant.

The judgment of the Court of Common Pleas of Hamilton County is therefore affirmed.

LONG and O'CONNELL, JJ., concur.